IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA
PITTSBURGH

| | |
|---|---|
| ELANEA M. DEAL,<br><br>        Plaintiff,<br><br>vs.<br><br>NATIONWIDE PROPERTY AND<br>CASUALTY INSURANCE COMPANY,<br><br>        Defendant, | 2:22-CV-01269-MJH |

OPINION

Plaintiff, Elanea M. Deal, brings the within action against Defendant, Nationwide Property & Casualty Insurance Company, for Breach of Contract (Count I); Bad Faith Insurance Practices under Pa.C.S. § 8371 (Count II); Bad Faith Insurance Practices under Common Law (Count III); Violation of the Unfair Trade Practices and Consumer Protection Law (UTPCPL) (Count IV); and Violation of 75 Pa.C.S. § 1716 (Count V). (ECF No. 1-2).

Nationwide has filed a Motion to Dismiss pursuant to Fed. R. Civ. P. 12(b)(6), seeking dismissal of Counts II, III, IV, and V of Complaint, and a Motion to Strike pursuant to Fed. R. Civ. P. 12(f), seeking to strike allegations that it owed Ms. Deal a fiduciary duty. (ECF No. 4). The matter is now ripe for consideration.

Upon consideration of Ms. Deal's Complaint (ECF No. 1-2), Nationwide's Motion to Dismiss and Motion to Strike (ECF NO. 4), the respective responses and briefs of the parties (ECF Nos. 5, 6, and 7), and for the following reasons, Nationwide's Motion to Dismiss will be granted in part and denied in part, and Nationwide's Motion to Strike will be granted.

I. Background

This case arises out of a motor vehicle accident and Ms. Deal's subsequent claim for Uninsured Motorist (UM) benefits. (ECF No. 1-2). Ms. Deal alleges that she was the front seat passenger in a vehicle that was rear-ended by an unknown driver who fled the scene. *Id*. at ¶¶ 14-16. Ms. Deal avers she sustained various injuries and damages as a result of this accident. *Id*. at ¶¶ 17, 21-24. At the time of the accident, Deal was insured under an automobile insurance policy with Nationwide. *Id*. at ¶ 10.

Ms. Deal alleges that, on December 23, 2019, she submitted a notice of a UM claim to Nationwide via letter of representation and that on September 20, 2021, her counsel specifically requested that Nationwide, through its adjuster, open a UM claim. *Id*. at ¶¶ 19-20. Ms. Deal avers that Nationwide took no action to evaluate her claim, despite the letter of representation and the subsequent request to open a UM claim. *Id*.at ¶ 27. She also alleges that Nationwide "failed to perform any investigation of its own," and on March 1, 2022, her counsel provided documentation in support of her UM claim. *Id*. at ¶ 31. On March 10, 2022, Nationwide allegedly responded with an offer of $1,000.00. *Id*. at ¶¶ 29, 33. Ms. Deal alleges that Nationwide justified its offer because Ms. Deal "had not been seen by 'specialists,' and that diagnostic tests had not revealed fractures, dislocations or like conditions which may appear on diagnostic films." *Id*. at ¶ 33. On April 8, 2022, Ms. Deal's counsel and Nationwide's adjuster held a discussion wherein, the adjuster allegedly "discounted the validity of chiropractic care in general, and indicated that he would disregard the opinions of chiropractors." *Id*. at ¶¶ 36-37

Ms. Deal also alleged that, when Nationwide sold its policy to her, it violated the UTPCPL. *Id*. at ¶ 59. Specifically, Ms. Deal avers that Nationwide misrepresented to her and

deceived her that, in the event of a motor vehicle accident in which UM benefits were due and owing, the same would be paid to her promptly and without dilatory conduct. Id. at ¶¶ 60, 62.

In its Motion to Dismiss, Nationwide argues that Ms. Deal fails to state a claim for statutory bad faith (Count II); Ms. Deal's claim for common law bad faith (Count III) is duplicative of her claim for statutory bad faith; Ms. Deal fails to state a claim for violation of the UTPCPL (Count IV); and Ms. Deal's claim for UM benefits pursuant to 75 Pa.C.S. § 1716 (Count V) is not recognized by law and should be dismissed. In its Motion to Strike, Nationwide contends that Ms. Deal's allegations that Nationwide owes her a fiduciary duty should be stricken.

II. Standards of Review

A. Motion to Dismiss

When reviewing a motion to dismiss, pursuant to Federal Rule of Civil Procedure 12(b)(6), the court must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Eid v. Thompson*, 740 F.3d 118, 122 (3d Cir. 2014) (quoting *Phillips v. County of Allegheny*, 515 F.3d 224, 233 (3d Cir.2008)). "To survive a motion to dismiss a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556); *see also Thompson v. Real Estate Mortg. Network*, 748 F.3d 142, 147 (3d Cir. 2014). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory

statements, do not suffice." *Iqbal*, 556 U.S. at 678. "Factual allegations of a complaint must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. A pleading party need not establish the elements of a *prima facie* case at this stage; the party must only "put forth allegations that 'raise a reasonable expectation that discovery will reveal evidence of the necessary element[s].'" *Fowler v. UPMC Shadyside*, 578 F.3d 203, 213 (3d Cir.2009) (quoting *Graff v. Subbiah Cardiology Associates, Ltd.*, 2008 WL 2312671 (W.D. Pa. June 4, 2008)); *see also Connelly v. Lane Const. Corp.*, 809 F.3d 780, 790 (3d Cir.2016) ("Although a reviewing court now affirmatively disregards a pleading's legal conclusions, it must still . . . assume all remaining factual allegations to be true, construe those truths in the light most favorable to the plaintiff, and then draw all reasonable inferences from them.") (citing *Foglia v. Renal Ventures Mgmt., LLC*, 754 F.3d 153, 154 n. 1 (3d Cir.2014)).

Nonetheless, a court need not credit bald assertions, unwarranted inferences, or legal conclusions cast in the form of factual averments. *Morse v. Lower Merion School District*, 132 F.3d 902, 906, n. 8 (3d Cir.1997). The primary question in deciding a motion to dismiss is not whether the Plaintiff will ultimately prevail, but rather whether he or she is entitled to offer evidence to establish the facts alleged in the complaint. *Maio v. Aetna*, 221 F.3d 472, 482 (3d Cir.2000). The purpose of a motion to dismiss is to "streamline [ ] litigation by dispensing with needless discovery and factfinding." *Neitzke v. Williams*, 490 U.S. 319, 326–327, (1989).

When a court grants a motion to dismiss, the court "must permit a curative amendment unless such an amendment would be inequitable or futile." *Great Western Mining & Mineral Co. v. Fox Rothschild LLP*, 615 F.3d 159, 174 (3d Cir. 2010) (internal quotations omitted). Further, amendment is inequitable where there is "undue delay, bad faith, dilatory motive, [or] unfair prejudice." *Grayson v. Mayview State Hosp.*, 293 F.3d 103, 108 (3d Cir. 2002). Amendment is

4

futile "where an amended complaint 'would fail to state a claim upon which relief could be granted.' " *M.U. v. Downingtown High Sch. E.*, 103 F. Supp. 3d 612, 631 (E.D. Pa. 2015) (quoting *Great Western Mining & Mineral Co.*, 615 F.3d at 175).

      B.  Motion to Strike

Federal Rule of Civil Procedure 12(f) permits the court to strike "any redundant, immaterial, impertinent, or scandalous matter." "The purpose of a motion to strike is to clean up the pleadings, streamline litigation, and avoid unnecessary forays into immaterial matters." *Zaloga v. Provident Life & Acc. Ins. Co. of Am.*, 671 F. Supp.2d 623 (M.D.Pa. 2009). "A decision to grant or deny a motion to strike a pleading is vested in the trial court's discretion." *Zaloga*, 671 F. Supp. 2d at 633 (citing *Snare & Triest v. Friedman*, 169 F. 1, 6 (3d Cir. 1909); *BJC Health System v. Columbia Cas. Co.*, 478 F.3d 908, 917 (8th Cir. 2007)). Motions to strike "are not favored and usually will be denied unless the allegations have no possible relation to the controversy and may cause prejudice to one of the parties, or if the allegations confuse the issues in the case." *Hay v. Somerset Area Sch. Dist.*, No. 3:16-cv-229, 2017 WL 2829700, at *3 (W.D. Pa. June 29, 2017) (quoting *Tennis v. Ford Motor Co.*, 730 F.Supp.2d 437, 443 (W.D. Pa. 2010)).

    III.  Discussion

      A.  Motion to Dismiss

        1.  Count II-Statutory Bad Faith

Nationwide argues that Ms. Deal's statutory bad faith claim, pursuant to 42 Pa.C.S.A. § 8371 related to her UM benefits claim, should be dismissed because Ms. Deal avers insufficient facts and legal conclusions. Nationwide further contends that Ms. Deal's allegations are the type of formulaic recitation of the elements of a cause of action that fail to state a claim under federal

pleading standards and have routinely been dismissed by this Court and other District Courts in Pennsylvania. Finally, Nationwide maintains that Ms. Deals' bad faith claim amounts to a disagreement with Nationwide's evaluation of her claim.

Ms. Deal argues that her assertions of bad faith include allegations that Nationwide failed to perform its own, independent investigation of Ms. Deal's UM claim, offered only $1,000 despite traumatic brain injury and back injuries, and discounted chiropractic care as not "real" treatment. Ms. Deal, maintains that these assertions, taken together, support the manner in which Nationwide's conduct constitutes bad faith.

42 Pa.C.S. § 8371 provides a statutory cause of action for bad faith for action arising under an insurance policy. The statute provides as follows:

> In an action arising under an insurance policy, if the court finds that the insurer has acted in bad faith toward the insured, the court may take all of the following actions:
>
> (1) Award interest on the amount of the claim from the date the claim was made by the insured in an amount equal to the prime rate of interest plus 3%.
> (2) Award punitive damages against the insurer.
> (3) Assess court costs and attorney fees against the insurer.

42 Pa.C.S. § 8371.Under Pennsylvania law, to recover for bad faith, a plaintiff must prove, by clear and convincing evidence, that: (1) an insurer lacked a reasonable basis for denying a claim; and, (2) knew or recklessly disregarded its lack of reasonable basis in denying it. *Klinger v. State Farm Mut. Auto. Ins. Co.*, 115 F.3d 230, 233 (3d Cir. 1997); *Polselli v. Nationwide Mut. FireIns. Co.*, 23 F.3d 747, 750 (3d Cir. 1994); *Terletsky v. Prudential Prop. & Cas. Ins. Co.*, 649 A.2d 680, 688 (Pa. Super. 1994). "Bad faith claims are fact specific and depend on the conduct of the insurer vis à vis the insured." *Condio v. Erie Ins. Exch.*, 899 A.2d 1136, 1143 (2006) (citing *Williams v. Nationwide Mutual Ins. Co.*, 750 A.2d 881, 887 (Pa. Super. 2000)). An insured must

set forth more than "'bare-bones' conclusory allegations that are not accompanied by factual allegations sufficient to raise the claims to a level of plausibility required to survive a Rule 12(b)(6) motion to dismiss." *Kosmalski v. Progressive Preferred Ins.*, No. CV 17-5726, 2018 WL 2045827, at *2 (E.D. Pa. May 2, 2018).

An insurer's "failure to immediately accede to a demand for the policy limit cannot, without more, amount to bad faith." *Smith v. State Farm Mut. Auto. Ins. Co.*, 506 F. App'x 133, 137 (3d Cir. 2012). "Pennsylvania courts have recognized an insurer's right to investigate and evaluate UIM claims." *Higman v. State Farm Mut. Auto. Ins. Companies,* No. 2:18-CV-00662, 2018 WL 5255221, at *4 (W.D. Pa. Oct. 22, 2018). A plaintiff may, however, "make a claim for bad faith stemming from an insurer's investigative practices, such as a 'lack of a good faith investigation into facts, and failure to communicate with the claimant.'" *Meyers v. Protective Ins. Co.*, No. 3:16-CV-01821, 2017 WL 386644, at *6 (M.D. Pa. Jan. 27, 2017) (quoting *Romano v. Nationwide Mut. Fire Ins. Co.*, 646 A.2d 1228, 1232 (Pa. Super. 1994)). "Delay is a relevant factor in determining whether bad faith has occurred, but a long period of time between demand and settlement does not, on its own, necessarily constitute bad faith ... [I]f delay is attributable to the need to investigate further or even to simple negligence, no bad faith has occurred." *Rowe v. Nationwide Ins. Co.*, 6 F. Supp. 3d 621, 634 (W.D. Pa. 2014) (quoting *Kosierowski v. Allstate Ins. Co.*, 51 F.Supp.2d 583, 588–89 (E.D. Pa. 1999) *aff'd*, 234 F.3d 1265 (3d Cir. 2000)).

Here, Ms. Deal's statutory bad faith claim includes factual allegations beyond boilerplate conclusory allegations. In her Complaint, Ms. Deal alleges as follows:

> 32. Defendant Insurance Company had a duty to independently investigate, evaluate, and pay benefits under the applicable coverage, but failed to do so, instead waiting to be provided all relevant information and documentation by Plaintiff's counsel.

> 33. Subsequently, on or about March 10, 2021, Defendant Insurance Company extended its unreasonably low offer of $1,000.00. The sole analysis purporting to justify the offer was that Plaintiff had not been seen by "specialists," and that diagnostic tests had not revealed fractures, dislocations or like conditions which might appear on diagnostic films.
>
> 34. Defendant Insurance Company, despite being obligated to complete an investigation within thirty (30) days of notification of the claim, failed to perform such an investigation within that timeframe and, indeed, upon information and belief, performed no "investigation" beyond the information they were given by their insured.
>
> 35. Rather, Defendant Insurance Company simply made an unjustifiably low offer of $1,000.00, without sufficient, reasoned explanation or justification.
>
> 36. Following the offer of $1,000.00, on April 8, 2022, Plaintiff's counsel spoke with Mr. Cheney and reiterated to him the severity of Plaintiff's injuries and the extensive amount of treatment she has received for the same; Plaintiff's counsel expressed that the $1,000.00 offer was entirely unreasonable, given Plaintiff's injuries and her ongoing, permanent pain.
>
> 37. During the April 8, 2022 conversation, Mr. Cheney completely discounted the validity of chiropractic care in general, and indicated that he would disregard the opinions of chiropractors (including the chiropractor providing care to Plaintiff).
>
> 38. Mr. Cheney refused to increase the offer extended to Plaintiff, and he has not increased said offer to date.
>
> 39. Defendant Insurance Company's position with regard to this claim has illogically ignored the scope and severity of the Plaintiff's injuries and has sought to provide her with only a fraction of the benefits due and owing to her.

(ECF No. 1-2 at ¶¶ 32-39).  In viewing these allegations in a light most favorable to Ms. Deal, her Complaint presents a plausible claim for bad faith that moves beyond a disagreement in claim valuation.  Any factual or legal conclusions, related to whether Ms. Deal's bad faith claim related to Nationwide's offer, alleged cursory investigation or non-investigation, and comments regarding the legitimacy of chiropractic care were reasonable, are premature.  Therefore, Ms. Deal's bad faith claim should proceed beyond the pleading stage.

Accordingly, Nationwide's Motion to Dismiss, as regard Ms. Deal's statutory bad faith claim at Count II, will be denied.

### 2. Count III- Common Law Bad Faith Insurance Practices

Next, Nationwide maintains that Ms. Deal's common law bad faith claim is duplicative of her statutory bad faith claim. Therefore, Nationwide contends that Count III should be dismissed. In her response, Ms. Deal asserts that she is willing to withdraw Count III in recognition of the validity of her Breach of Contract (Count I) and Statutory Bad Faith (Count II) claims.

Accordingly, Nationwide's Motion to Dismiss, as regard Ms. Deal's common law bad faith claim at Count III, will be granted. Count III will be dismissed.

### 3. Count IV-UTCPL

Next, Nationwide contends that Ms. Deal's UTPCPL claim fails as a matter of law, because the Complaint is based upon post-contract formation conduct. Nationwide further argues that Ms. Deal's claims are based upon Nationwide's alleged failure to conduct a full, prompt, and fair evaluation of Ms. Deal's UM claim. Nationwide maintains that the Complaint's allegations are clearly related to claim handling and not to the sale of the insurance policy. Therefore, Nationwide asserts that, since the UTPCPL applies only to the sale of an insurance contract, and not to claim handling, Ms. Deal's claim should fail. Nationwide also argues that Ms. Deal does not allege any specific misrepresentation that was made at the time of the sale of the Policy.

Ms. Deal responds that her UTPCPL claim includes factual allegations other than the post-contract claims handling. In particular, she argues that Nationwide misrepresented the benefits of its policy when it sold the applicable policy to Ms. Deal.

9

To establish a claim under the UTPCPL, a plaintiff must prove: (1) he or she purchased or leased goods or services; (2) the goods or services were primarily for personal, family or household purposes; and (3) the plaintiff suffered an ascertainable loss as a result of the defendant's unlawful, deceptive act. 73 P.S. § 201–9.2(a). The plaintiff must show that the loss was caused by his or her justifiable reliance on the deceptive conduct. *Hunt v. U.S. Tobacco Co.*, 538 F.3d 217, 221 (3d Cir. 2008) (citing *Schwartz v. Rockey*, 593 Pa. 536, 932 A.2d 885, 897 n.16 (2007); [*Toy v. Metro. Life Ins. Co.*, 593 Pa. 20, 928 A.2d 186, 202 (2007)]; *Yocca v. Pittsburgh Steelers Sports, Inc.*, 578 Pa. 479, 854 A.2d 425, 438 (2004)).

The insurance bad faith statute applies to post-contract formation conduct. The UTPCPL, on the other hand, applies to conduct surrounding the insurer's pre-formation conduct. The UTPCPL applies to the sale of an insurance policy. It does not apply to the handling of insurance claims. *Gibson v. Progressive Specialty Ins. Co.*, No. 15–1038, 2015 WL 2337294, at *4 (E.D. Pa. May 13, 2015). Section 8371 provides the exclusive statutory remedy applicable to claims handling. *Id*. Hence, an insured cannot bring an action under the UTPCPL based upon the insurer's failure to pay a claim or to investigate a claim. *Nordi v. Keystone Health Plan W., Inc.*, 989 A.2d 376, 385 (Pa. Super. 2010); *Horowitz v. Fed. Kemper Life Assur. Co.*, 57 F.3d 300, 307 (3d Cir. 1995) (citing *Gordon v. Pa. Blue Shield,* 378 Pa.Super. 256, 548 A.2d 600, 604 (1988)); see also Wenk v. State Farm Fire & Cas. Co., 228 A.3d 540, 550(Pa. Super. 2020) ("The UTPCPL applies to the sale of an insurance policy, it does not apply to the handling of insurance claims, as alleged herein." (citing *Neustein v. Government Employees Insurance Co.*, 2018 WL 6603640 at *2 (W.D. Pa. filed November 29, 2018))).

Here, despite her allegations of misrepresentations in the sale of the insurance policy, Ms. Deal fails to state a claim for a violation of the UTPCPL.  The crux of the Complaint is the

10

handling of Ms. Deal's insurance claim and not the sale of the policy. The Complaint contains no allegations of any specific misrepresentation made by Nationwide at the time it sold the policy to Ms. Deal. All allegations of misrepresentations relate to claims handling, and thus post-contract formation conduct.

Accordingly, Nationwide's Motion to Dismiss, as regard Ms. Deal's UTPCPL claim at Count IV, will be granted. As Ms. Deal's UTPCPL claim fails as a matter of law, amendment will be deemed futile.

### 4. Count V-MVFRL Section 1716

Nationwide argues that Plaintiff's claim for violation of 75 Pa.C.S.A § 1716 should be dismissed, because Section 1716 does not provide for the recovery of uninsured motorist benefits. Specifically, Nationwide argues that Section 1716 is contained within the subchapter of the Pennsylvania Motor Vehicle Financial Responsibility Law ("MVFRL") that speaks to first party benefits, 75 Pa.C.S.A. §§ 1711-1725, and not within the subchapters of the MVFRL that covers underinsured motorist benefits, 75 Pa.C.S.A. §§ 1731-1738. Nationwide further argues that neither uninsured nor underinsured motorist benefits are listed in the MVFRL's definition of "benefits" or "first party benefits." Accordingly, Nationwide asserts that no cause of action exists under 75 Pa.C.S.A § 1716 for an insurer's failure to pay uninsured motorist benefits.

Ms. Deal agrees that Section 1716's is placed in the first party portion of the MVFRL, but asserts that Pennsylvania courts consider uninsured motorist claims to be a "hybrid" of first-party claims and third-party claims, and that uninsured motorist claims are thus entitled to the protection of Section 1716.

Section 1716 of the MVFRL provides:

> Benefits are overdue if not paid within 30 days after the insurer receives
> reasonable proof of the amount of the benefits. If reasonable proof is not supplied

> as to all benefits, the portion supported by reasonable proof is overdue if not paid within 30 days after the proof is received by the insurer. Overdue benefits shall bear interest at the rate of 12% per annum from the date the benefits become due. In the event the insurer is found to have acted in an unreasonable manner in refusing to pay the benefits when due, the insurer shall pay, in addition to the benefits owed and the interest thereon, a reasonable attorney fee based upon actual time expended.

75 Pa.C.S.A § 1716. Section 1702 defines "[b]enefits" or "first party benefits" as: "[m]edical benefits, income loss benefits, accidental death benefits and funeral benefits." 75 Pa.C.S.A § 1702. "Underinsured motor vehicle" and "[u]ninsured motor vehicle" are also separately defined at Section 1702.

Case law emphasizes the importance of the statutory organization of the MVFRL into subchapters and that Section 1716 addresses only to "first party benefits." *See Westbrook v. Robbins*, 611 A.2d 749, 752 (Pa. Super. 1992) ("[W]hen construing the MVFRL it is important to pay close attention to the language of the act, itself, and the statute's organization into subchapters." (citing *Hackenberg v. Southeastern Pennsylvania Transportation Authority*, 586 A.2d 879 (Pa. 1991))); *see also id.* at 754 ("However, the attorney's fees and interest provision in subchapter B has no such parallel in subchapter E. The parallelism of the subchapters indicates the legislature intended each to stand on its own. Otherwise, there would have been no need to duplicate similar provisions in each subchapter. Thus, had the legislature intended subchapter E to include a provision for attorney's fees and interest, it would have inserted one. We will not now read such a provision into subchapter E."); *Motorists Ins. Companies v. Emig*, 664 A.2d 559, 568 (Pa. Super. 1995) ("Sections 1734 and 1791 are both provisions of the MVFRL. Section 1734 is part of Subchapter 'C' of the MVFRL, and Section 1791 is found in Subchapter 'I' thereof. This distinction is important because we are required to heed closely to the subchapters into which the various provisions of the MVFRL are organized. We will not

apply a provision in one subchapter to interpret a provision in another subchapter, especially when to do so cuts against the grain of legislative intent." (citations omitted)); *Hill v. Nationwide Ins. Co.*, 570 A.2d 574, 579 (Pa. Super. 1990) (explaining that "Section 1716 of the MVFRL permits the recovery of attorney fees in an action for first-party benefits by an insured where the insurer has 'acted in an unreasonable manner in refusing to pay the benefits when due.' " (emphasis added)); *Richter v. Geico Indem. Co.*, 797 F. Supp. 2d 529, 533 (E.D. Pa. 2011) (same).

Furthermore, the Superior Court of Pennsylvania has distinguished between first party benefits and underinsured or uninsured motorist benefits. *See Pantelis v. Erie Ins. Exch.*, 890 A.2d 1063, 1067 (Pa. Super. 2006) ("Our jurisprudence reveals that, in the case of first party benefits, the 30–day period set forth in § 1716 can be triggered by something as simple as submission of a bill from a medical provider. On the other hand, legal entitlement to recovery of uninsured motorist benefits for purposes of § 1731(b) is based on the wrongful conduct of a third party." (citations omitted)). In *Pantelis*, the Superior Court explained that "[t]he statutory framework and applicable case law establishes that payment of UM/UIM claims is subject to a different analysis than payment of first party benefits." 890 A.2d at 1068.

Here, Ms. Deal's Complaint cannot support a claim for violation of 75 Pa.C.S.A § 1716 because, under the plain and unambiguous language of the MVFRL, Section 1716 does not apply to claims for uninsured motorist benefits. Section 1716 applies to a class of "benefits," which does not include uninsured motorist benefits. Section 1716's purpose is also belied by its location in Subchapter B of the MVFRL, which is titled: "Motor Vehicle Liability Insurance First Party Benefits."   Had the legislature desired to include a similar section in Subchapter C of the MVFRL, which is titled "Uninsured and Underinsured Motorist Coverage," it could have

done so. It did not. Therefore, the Court concludes that, under the plain and unambiguous provisions of the MVFRL, Ms. Deal cannot bring a separate claim for underinsured motorist benefits under Section 1716.

Accordingly, Nationwide's Motion to Dismiss, as regard Ms. Deal's MVFRL Section 1716 claim at Count V, will be granted. As Ms. Deal's MVFRL Section 1716 claim fails as a matter of law, amendment will be deemed futile.

### B. Motion to Strike

Finally, Nationwide contends that Ms. Deal's allegations that Nationwide had and/or breached a fiduciary duty in its handling of her UM claim should be stricken because it does not owe her a fiduciary duty within the context of a UM claim. In response, Ms. Deal acknowledges that she has not alleged a separate claim for breach of fiduciary duty but that references to said duty, are appropriate in the context of her Complaint.

It is "well-established" an insurer does not owe its insured a fiduciary duty "in the context of [ ] underinsured/uninsured motorist benefits." *Meyers v. Protective Ins. Co.,* No. 16-01821, 2017 WL 386644, at *5 (M.D. Pa. Jan. 27, 2017); *see also, e.g., Pommells v. State Farm Ins.*, No. 18-5143, 2019 WL 2339992, at *4 (E.D. Pa. June 3, 2019); *Bare v. State Auto Grp.*, No. 13-2812, 2013 WL 3878606, at *1 (E.D. Pa. July 26, 2013).

Here, in the remaining claims, breach of contract and statutory bad faith, the existence or non-existence of a fiduciary duty is not a requisite to Ms. Deal proving those claims. Instead, her claims will be governed by the language of the policy and the reasonableness or unreasonableness of Nationwide's claims handling process. Therefore, allegations of a fiduciary duty are immaterial and unnecessary for Ms. Deal's claims.

Accordingly, Nationwide's Motion to Strike, as regard fiduciary duty allegations, will be granted.

IV.     Conclusion

Following consideration of the foregoing, Nationwide's Motion to Dismiss will granted in part and denied in part.   Nationwide's Motion to Dismiss, as regards Count II, will be denied. Nationwide's Motion to Dismiss, as regards Counts III, IV, and V, will be granted.   Counts III, IV, and V will be dismissed, and any amendment of those counts is deemed futile.  Nationwide's Motion to Strike, as regards fiduciary duties, is granted.  All reference to fiduciary duty will be stricken.  A separate order will follow consistent with this opinion and directing a timeline to answer the Complaint.

DATED this 31st day of October, 2022.

BY THE COURT:

*[signature]*
MARILYN J. HORAN
United States District Judge